Sseed, J.,
delivered the opinion of the court:
TMs is an action of ejectment brought in the circuit court of Hancock county, by the heirs at law of Francis Fannin, deceased, against thé heirs, at law of Tawce Gower, deceased to recover a tract of land of two hundred -and fifty acres lying in said county.
The action was begun on the 20th of September, 1875, and the issues, upon waiver of a jury, were submitted to the circuit judge, by whom they were determined in favor of the defendants, from wMch judgment the plaintiffs have appealed in error.
The defendants pleaded the general issue and the statute *334 of limitations o{ seven years. The declaration describes the tract of land sued for, of two hundred and fifty acres, by metes and bounds, and there being no disclaimer of possession of any portion of the land sued for, filed by the defendants, the plea, of the general issue admits the possession of the whole tract, and the effect of the judgment below is to vest the whole in the defendants, as an absolute estate in fee under a sheriffs deed, as an alleged assurance of title, which only purports to convey to the defendants5 ancestor one hundred acres. We need not deraign the plaintiff’s title, as it is conceded to be good, unless the defendants have acquired a paramount title by the laches of the plaintiffs, under the statute of limitation.
The facts are, that the defendants’ 'ancestor, Tawce Gower, on the 30th of August, 1856, recovered a judgment before a justice of said county against Enos Carter, James Riley, and Salathiel Riley, upon which the ancestor of the plaintiffs, Francis Fannin, became the st&yor. On the 7th of October, 1857, an execution under this judgment, for about $41.66 and costs, was levied by a constable on “100 acres of land, the property of Salathiel Riley and Francis Fannin, adjoining lands of Joel W.. Jarvis, in the fifth district.” On the 2d day of August, 1858, Sheriff Campbell, of said county of Hancock, sold said land at public sale to Tawce Gower, for $52.90. On the 12th of February, 1862, Sheriff Rains executed to said Tawce Gower a sheriffs deed, reciting the foregoing facts, with no other description of the laud conveyed than such as it is assumed was given in the levy, in the words, “levied October 7, 1857, on 100 acres of land, the property of Salathiel Riley and Francis Fannin, adjoining lands of Joel W. Davis, in the fifth district.” It appears in proof that the tract of land of 250 acres, now in controversy, did adjoin the lands of J arvis and others, but that it lay 'north of a ridge, and was worth, at the time of the sheriff’s sale, about $1,000. It appears, also, that Salathiel Riley, one of. the principals in said judgment, owned a tract of land of less *335 tbau 100 acres, lying south of the ridge, and adjoining the lands of Joel W. Jarvis, in the fifth district, worth at the time of the sale, about $1,000, and it cannot be doubted, from the proof, that the land of Salathiel Riley was the land levied on and sold, and the same attempted to' be described in the deed. Under the said sale the said Salathiel Riley surrendered the land to Tawce Gower, in his lifetime, who used and occupied it as his own. It is in proof also, that Francis Fannin and Sálathiel Riley owned no lands jointly. The land in controversy was conveyed by one Kerolett to Francis Fannin, on the 20th of November, 1850, and he held and ocupied the same from that time until the spring of 1865, when the troubles incident to the civil war, led him to move into Virginia, where he died in 1868. From the time of the said levy, and the sale in August, 1858, up to the time of Francis Fannin’s removal to Virginia, in 1865, the defendants’ ancestor, Tawce Gower asserted no claim whatever to the land in controversy, but did assert a claim to the smaller tract of Salathiel Riley. When Francis Fannin went to Virginia he left the land in controversy in the control of an agent, who had control of it until late in 1866, when Tawce Gower, without the consent of Fannin, and against the remonstrances of his agent, entered upon the land, and held and claimed it until 1871, when he’died.
This action was brought, as we have seen, on the 20th of September, 1875, and upon this character of possession, and under the said sheriff’s “assurance of title,” the circuit judge held that the defendants were protected, and hold the lands by absolute title in fee. As a matter of fact, we think it is clear that the description of the 100 acres, as given in the levy and sheriff’s deed, has no reference to any part of the Fannin tract of 250 acres, all of which the defendants have recovered in this action.
But the rights of the parties must be determined upon the validity of the levy and sale, and upon the terms of the sheriff’s deed as an assurance of title. We hold that the *336 description of tlie lan,cl in tlie levy and deed is too vague, indefinite, and uncertain to be recognized or sustained as an assurance of title under our law. Without, reference to the extraordinary feature of the case> that upon an alleged assurance of title for only one hunded acres, the defendants have an absolute title adjudged to them of two hundred and fifty acres, we are constrained to hold that the deed is a nullity, even as to the one hundred acres it purports to convey, for the want of a sufficient description of the lands levied on and. sold. This court has laid clown certain rules upon this subject, which must not be departed from. It was said in the case of Henderson v. Overton, 2 Yer., 394, that “as an assurance of title, a sheriff’s deed stands lower than any other.” The land, it is true, need not he described in a levy with specific accuracy, by metes and hounds, but a general description will answer, provided it is sufficient to distinguish it from other lands. And if the levy description is in itself defective, the title does not rest upon the description in the levy, hut the deeds may come in aid of it, if that defines the locality with sufficient precision. Vance v. McNairy, 3 Yer., 177; Parker v. Swan, 1 Hum., 80. The rule is that the levy must, at least, be so definite that purchasers must have the means of knowing what land is to be sold, so as to form an estimate of its value; and there must be such an ascertainment, by description, of identity as shall prevent one piece of land from being levied on, and a distinct piece conveyed. Gibbs v. Thompson, 7 Hum., 181. The description in this case is “100 acres of land, the property of Salathiel Riley and Prancis Fannin, adjoining lands of'Joel W. Jarvis, in the fifth district.” How would a sheriff or a purchaser identify the land sold under such a description? Was it an attempt to levy on a hundred acres of Francis Fannin and Salathiel Riley, as tenants in common? -How and where could such a tract he found in tlie face of the proof ‘that they owned no land jointly? We must hold the levy insufficient, and the deed inoperative and not an assurance of title, or an *337 effective muniment to create a title under tbe statute- of limitations.
lloverse tbe judgment, and let judgment be entered bere for plaintiff.